**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**


SYMBOLOGY INNOVATIONS LLC

      Plaintiff,                             CIVIL ACTION NO. 1:18-cv-00879-MEH

      v.

OTTER PRODUCTS, LLC

      Defendant.

---

**OTTER PRODUCTS, LLC's MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM**

---

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      **Background and Patents-in-Suit** ................................................................... 1

II.     **Applicable Law** ................................................................................................ 4

       A.      Dismissal Pursuant to Rule 12(b)(6) ......................................................... 4

       B.      Failure to State a Claim Where a Patent Claims Ineligible Subject Matter ........... 4

       C.      Patent Eligibility Under 35 U.S.C. § 101 ................................................. 5

III.    **Argument** ......................................................................................................... 6

       A.      The Patents-in-Suit Are Directed to an Abstract Idea ............................ 6

       B.      The Remaining Claims of the Patents-in-Suit are Also Abstract and Invalid ................................................................................................. 12

       C.      The Patents-in-Suit Do Not Have a Transformative Step ..................... 14

       D.      The Patents-in-Suit Threaten to Preempt the Field .............................. 17

IV.     **Conclusion** .................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013).............................................................................6

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016), *cert. denied sub nom. Affinity Labs of Texas,*
   *LLC v. DIRECTTV, LLC*, 137 S. Ct. 1596 (2017) ................................................10

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014)................................................................................ *passim*

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016).......................................................................5, 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................4

*Bancorp Servs. LLC v. Sun Life Assurance Co.*,
   687 F.3d 1266 (Fed. Cir. 2012).......................................................................4, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................4

*Bilski v. Kappos*,
   561 U.S. 593 (2010).......................................................................................4, 13

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014).....................................................................4, 15

*Concaten, Inc. v. Ameritrak Fleet Sols., LLC*,
   131 F. Supp. 3d 1166 (D. Colo. 2015), *aff'd*, 669 F. Appx 571 (Fed. Cir.
   2016) ....................................................................................................................7

*Content Aggregation Sols. LLC v. Blu Prods., Inc.*,
   No. 316-cv-00527-BEN-KSC, 2016 WL 6995490 (S.D. Cal. Nov. 29, 2016) ........6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   777 F.3d 1343 (Fed. Cir. 2014)..........................................................7, 11, 12, 16

*Cyberfone Sys., EEC v. CNN Interactive Grp., Inc.*,
   558 F. App'x 988 (Fed. Cir. 2014) ....................................................................12

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011)............................................................................6

*Diamond v. Diehr*,
    450 U.S. 175 & n.14 (1981)........................................................................................1, 13

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)...............................................................................6, 8, 10

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012)........................................................................................13

*Four Winds Interactive LLC v. 22 Miles, Inc.*,
    No. 16-CV-00704-MSK-STV, 2017 WL 4334074 (D. Colo. Mar. 28, 2017) ...................4, 14

*Genetic Techs. Ltd. v. Merial LLC*,
    No. 2015–1202, 2016 WL 1393573 (Fed. Cir. Apr. 8, 2016) .................................................4

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)...................................................................................6, 16

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015).................................................................................5, 9, 12

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    66 F. Supp. 3d 829 (E.D. Tex. 2014) ...............................................................................17

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012)...........................................................................................1, 7, 13, 14

*Morales v. Square, Inc.*,
    75 F. Supp. 3d 716 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir.
    2015) ................................................................................................................................7

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016)..........................................................................................7

*Multimedia Plus, Inc. v. Playerlync, LLC*,
    198 F. Supp. 3d 264 (S.D.N.Y. 2016), *reconsideration denied*, No.
    14CV8216, 2016 WL 5794779 (S.D.N.Y. Oct. 4, 2016) .......................................................6, 7

*Parker v. Flook*,
    437 U.S. 584 (1978)...........................................................................................................13

*Phoenix Licensing EEC. v. Consumer Cellular, Inc.*,
    No. 2:16-CV-0152-JRG-RSP, 2017 WL 1065938 (ED. Tex. Mar. 8, 2017) .........................16

*In re Salwan*,
    681 F. App'x 938 (Fed. Cir. 2017) ....................................................................................16

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)...................................................................................10, 11, 12

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)...........................................................................................10

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014).......................................................................8, 12, 14

**Statutes**

35 U.S.C. § 101 ....................................................................................................4, 5, 12, 17

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................4

Defendant Otter Products, LLC ("OtterBox") respectfully moves this Court to dismiss Plaintiff Symbology Innovations LLC's ("Symbology's") Complaint for failure to state a claim upon which relief can be granted.  On April 13, 2018, Symbology filed suit against OtterBox alleging infringement of United States Patent Nos. 8,424,752 (Dkt. 1-1, the "'752 Patent"); 8,651,369 (Dkt. 1-2, the "'369 Patent"); and 8,936,190 (Dkt. 1-3, the "'190 Patent", collectively, the "Patents-in-Suit").  *See* Dkt. 1 ("Complaint").   Long-standing precedent, tracing to the Supreme Court's decision in *Diamond v. Diehr*, holds that "laws of nature, natural phenomena, and abstract ideas are not patentable."  450 U.S. 175, 185 (1983); *and see Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012) ("[A]bstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work.").  Notwithstanding, the asserted patents seek to lay claim to a monopoly over and preempt well-known and widely adopted abstract ideas in the fields of data recognition and retrieval, doing nothing more than suggesting use of conventional components to perform generic functions in the place of a human. But these are abstract ideas "free to all men and reserved exclusively to none," leaving the asserted patents invalid under Section 101 of the Patent Act.  *Mayo*, 566 U.S. at 71.

Accordingly, OtterBox respectfully requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## I.       BACKGROUND AND PATENTS-IN-SUIT

Plaintiff filed its Complaint on April 13, 2018, which alleged that OtterBox had infringed the Patents-in-Suit through use of methods set forth in "one or more claims" of the Patents-in-Suit. Symbology's assertions of infringement allege "us[e] and/or incorporat[ion of] Quick Response (QR codes) into product packaging in a manner covered by one or more claims of" the Patents-in-Suit, based on alleged "internal[] testing of the functionality of [] QR codes in connection with product packaging":



Complaint, ¶¶ 25, 39, and 53.

The Patents-in-Suit purport to be directed towards a method "for enabling a portable electronic device to retrieve information about an object when the object's symbology, e.g., a barcode, is detected." *E.g.*, '752 Patent, at Abstract. Each of the Patents-in-Suit share an identical abstract and specification, with substantively identical titles[1], and each traces priority through continuation applications to Application No. 12/882,616.[2] Moreover, each of the asserted claims[3] are substantively and functionally identical. *See infra*, at Section III.B.

---

[1] The '369 Patent is titled "System and method for presenting information about an object on a portable device", with the '752 and '190 Patents titled "System and method for presenting information about an object on a portable *electronic* device." *See* Patents-in-Suit (emphasis denoting difference added).

[2] *See generally* Patents-in-Suit, at Abstract, Specification; *and see id.* at Related U.S. Application Data.

[3] Symbology's Complaint alleges infringement of Claim 6 of the '752 Patent, Claim 6 of the '369 Patent, and Claim 6 of the '190 Patent. Dkt. 1, at ¶¶ 23 (asserting Claim 6 of the '752 patent), 37 (Claim 6 of the '369 patent), and 51 (Claim 6 of the '190 patent).

The asserted claims perform steps that could be performed in the mind of an individual, such as a librarian.  For example, Claim 6 of the '752 Patent merely claims a series of rote steps:

(1) **capturing** an image with a generic 'portable [electronic] device' (*e.g.,* viewing a book label);

(2) **detecting** symbology (*e.g.*, recognizing a barcode or Dewey Decimal classification);

(3) **decoding** that symbology to return information (*e.g.,* interpreting that classification);

(4) **sending** that information to a generic server for processing and **receiving** information in response from that generic server (*e.g.*, asking a colleague where to find a certain author in the non-fiction section); and

(5) **displaying** that information received on the 'portable [electronic] device' (*e.g.,* informing a patron where the book would be located);

(6) where the detection is **automatic**, and **alerts** the user of the detection to **ask** if decoding of such symbology is desired, and **receives** a reply from a user (*e.g.,* offering the patron assistance locating the book).

*And see* '752 Patent, Claim 6.

While the applicant may divide the process into multiple steps, it is ultimately directed to the abstract process of recognizing and retrieving information related to patterns long known and used in the art.  The asserted patents claim these underlying abstract ideas *functionally*, rather than presenting concrete and specific improvements that inform how those functions are achieved, and attempt to claim all implementations of the abstract ideas.  And implementation of an abstract idea on a generic computer system "fail[s] to transform that abstract idea into a patent-eligible invention."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357 (2014) ("*Alice*").

## II.     APPLICABLE LAW

### A.     Dismissal Pursuant to Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *and see* Fed. R. Civ. P. 12(b)(6) (permitting motion to dismiss for failure to state a claim upon which relief can be granted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While well-pleaded facts must be taken as true, the Court should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678.

### B.     Failure to State a Claim Where a Patent Claims Ineligible Subject Matter

Under the Patent Act, abstract ideas are not eligible for patent protection, unless a purported inventor has contributed an inventive concept that transforms the abstract idea into something more. *See* 35 U.S.C. § 101. Whether the claims of the Patents-in-Suit are directed to ineligible subject matter under Section 101 is a threshold legal issue, and a question of law that can be decided through a motion to dismiss at the pleading stage before formal claim construction. *Bilski v. Kappos,* 561 U.S. 593, 602 (2010); *Bancorp Servs. LLC v. Sun Life Assurance Co.,* 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101."); *and see Four Winds Interactive LLC v. 22 Miles, Inc.*, No. 16-CV-00704-MSK-STV, 2017 WL 4334074, at *6 n. 8 (D. Colo. Mar. 28, 2017). Courts routinely find patents invalid under Section 101 based on the pleadings. *E.g., buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (affirming district court's finding of invalidity under § 101 at pleading stage); *Genetic Techs. Ltd. v. Merial LLC.*,

No. 2015–1202, 2016 WL 1393573, at *3 (Fed. Cir. Apr. 8, 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion.").

### C.   Patent Eligibility Under 35 U.S.C. § 101

Under the Supreme Court's landmark decision in *Alice*, determining whether a patent is impermissibly directed to an abstract idea involves a two-part test.  The Patents-in-Suit fail both steps of the *Alice* test.

*First*, a court must "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea.  *Alice,* 134 S. Ct. at 2355.  Courts "start by ascertaining the basic character of the subject matter."  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) ("*Internet Patents*").  Then a Court must determine "whether the claims focus on a specific means or method that improves the relevant technology or are directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery."  *Apple, Inc. v. Ameranth, Inc.,* 842 F.3d 1229, 1241 (Fed. Cir. 2016) (internal quotations omitted).

*Second*, if the claims are directed to an abstract idea, the court asks whether the claims contain "an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice*, 134 S.Ct. at 2357.  Transformation of the abstract idea through inclusion of an inventive concept requires "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *Alice*, 134 S.Ct. at 2355 (internal quotations omitted).

This "inventive concept" must be more than a bare recitation of generic computing hardware already known in the art.  *Alice*, 134 S. Ct. at 2358.  Neither implementing the idea using "wholly generic computer[s]" or components, nor employing every-day platforms such as the

Internet or Apple's iPhone devices, will save claims directed to abstract ideas.  *Id.*; *and see, e.g.,* '752, at 1:58-61, 4:17-22.  Nor can an applicant obtain patent protection for a process capable of being "performed in the human mind, or by a human using a pen and paper."  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).  Instead, "[w]here the steps of the claim could be performed by a human being without a computer, the claim is likely directed to an abstract idea."  *Content Aggregation Sols. LLC v. Blu Prods., Inc.*, No. 316-cv-00527-BEN-KSC, 2016 WL 6995490, at *3 (S.D. Cal. Nov. 29, 2016); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (analogy to corporate mailroom is "useful"); *and cf.* '752 Patent, at Claim 6 (requesting human input).

## III.    ARGUMENT

The asserted claims of the Patents-in-suit fail both steps of the *Alice* test: Each claim is directed to an abstract idea, and the claims lack any inventive concept sufficient to confer patent eligibility.  At best, they take abstract ideas and implement them with off-the-shelf technology— which cannot render the claims patent eligible.

### A.    The Patents-in-Suit Are Directed to an Abstract Idea

In order to confirm whether a claim is directed to an abstract idea, "the court must first 'identify and define whatever fundamental concept appears wrapped up in the claim.'"  *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013); *see also Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("Reflecting those points, we have described the first-stage inquiry as looking at the 'focus' of the claims, their 'character as a whole[.]'").  The Supreme Court has declined "to delimit the precise contours of the 'abstract ideas' category," *Alice*, 134 S.Ct. at 2357, but courts have found that "a claim is directed to an abstract idea when it describes a fundamental concept or longstanding practice."  *Multimedia Plus, Inc. v. Playerlync, LLC*, 198 F. Supp. 3d 264, 268 (S.D.N.Y. 2016),

*reconsideration denied*, No. 14CV8216, 2016 WL 5794779 (S.D.N.Y. Oct. 4, 2016), *and aff'd*, 695 F. App'x 577 (Fed. Cir. 2017) (citing *Morales v. Square, Inc.*, 75 F. Supp. 3d 716, 724 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir. 2015)).

The elements of Claim 6 of the '752 Patent, representative of all asserted claims (*see infra* Section III.B), amount to nothing more than recognizing one piece of information ("e.g., a barcode"; '752 Patent at 1:65-2:1) to retrieve other information ("information about the object"; *id.* at Claim 1).[4]  Under the first step of the *Alice* analysis, the 'focus' of Claim 6 is limited to recognition of data in a symbology in order to retrieve related information, with each step merely describing the logical, typical, and sequential manipulation of that data:

| Claim Language *(including antecedent claims)* | Abstract Idea |
|---|---|
| 1.   A method comprising: | |
| *capturing* a digital image using a digital image capturing device that is part of a portable electronic device; | *Capturing data* |
| *detecting* symbology associated with an object within the digital image using a portable electronic device; | *Detecting data* |
| *decoding* the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device; | *Decoding data* |

---

[4]   The Federal Circuit has held that a district court need not expressly address each asserted claim where the court concludes particular claims are representative because all the claims are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Faro Bank, Nat'l Ass'n*, 776 F.3d 1343 at 1348 (citation omitted); *see also Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 n.6 (Fed. Cir. 2016); *Concaten, Inc. v. Ameritrak Fleet Sols., LLC*, 131 F. Supp. 3d 1166, 1169-70 n.3 (D. Colo. 2015), *aff'd*, 669 F. Appx 571 (Fed. Cir. 2016) (for the purposes of deciding whether a patent is directed to an ineligible abstract idea, the court "may assume that the other claims in the patents do not differ significantly from [a representative claim]," citing *Mayo*, 566 U.S. at 73).

| | |
|---|---|
| *sending* the decode string to a remote server for processing; | *Sending data* |
| *receiving* information about the object from the remote server wherein the information is based on the decode string of the object; | *Receiving data* |
| *displaying* the information on a display device associated with the portable electronic device. | *Displaying data* |
| (Claim 5) wherein the one or more visual detection systems are configured to *automatically detect* the symbology. | *Automatically detecting data* |
| (Claim 6) *alerting* the user when an image containing symbology has been detected; | *Requesting input* |
| *asking* the user if decoding of the symbology is desired; and | |
| *receiving* a reply from the user. | *Receiving input* |

'752 Patent, at Claims 1, 5, and 6.

Each of these steps seeks to achieve nothing more than a logical, generic, functional step, such as would be performed by a conventional computer or by an individual human. Whether considered individually or as part of the larger claim, such broad concepts merely recite "an abstraction – an idea, having no particular concrete or tangible form." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). Inclusion of a generic computing device and other conventional components, whether a "portable electronic device," a "remote server," a "display device," or "visual detection systems" does not make the claims more tangible. *See* '752 Patent, at Claim 1; *and see id.* 1:38-61, 2:57-61, 3:29-36, 5:33-42; *Alice*, 134 S.Ct. at 2358. Claim 6 instead exemplifies abstract subject matter under Section 101, as the Federal Circuit has held that "collecting information, including when limited to particular content (which does not change its character as information)" and "analyzing information by steps people go through in their minds, or by mathematical algorithms" are mental processes that fall within the realm of abstract ideas. *Elec. Power Group LLC v. Alstom SA*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016).

Moreover, the common specification for the Patents-in-Suit concedes that technology for interpreting, decoding, and interacting with barcodes were commonplace before the purported invention of the claimed subject matter. *E.g.*, '752 Patent, at 3:29-36. The common specification even directs practitioners to use conventional, well-known technology and applications to perform each of the steps for capturing, detecting, decoding, and otherwise interacting with data (including from a barcode). The alleged shortcomings in the prior art, according to the patentee, reduces to a matter of convenience: "Since a user may have dozens of applications loaded on his or her portable electronic device, *it may be difficult* to select the appropriate application for executing the scanning functions." '752, at 3:36-39. But adding a computer or "portable electronic device" to make the process more convenient does not change the abstract nature of the claimed idea. *See Bancorp*, 687 F.3d at 1279 ("Using a computer to accelerate an ineligible mental process does not make that process patent-eligible"). Succinctly put, the applicant sought to automate a process that was purportedly[5] performed manually. But the common specifications are silent as to how to accomplish this supposedly central task. *And see Internet Patents*, 790 F.3d at 1348 (concluding that claim not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation.").

---

[5]    As set forth in OtterBox's Counterclaim, filed concurrently with this motion, prior art existed well before the priority dates of the Patents-in-Suit performing the steps alleged to infringe by Plaintiff's Complaint. *See, e.g.*, "Using QR Codes," YouTube.com, *available at* https://www.youtube.com/watch?v=IphTJHiKGos (posted Jan. 27, 2009) (last visited May 18, 2018); "Introduction to QR Codes", YouTube.com, *available at* https://www.youtube.com/watch?v=LMKLwFEiwOc (posted Aug. 20, 2009) (last visited May 18, 2018) (at time code 0:14, "They [QR codes] *often feature URLs that direct users to sites* that provide more information about the QR tagged object or place, thus hyperlinking the physical world to the Internet." (emphasis added)); "QR Code Business Cards," YouTube.com, *available at* https://www.youtube.com/watch?v=VEuX23iy2A4 (posted Sept. 25, 2009) (last visited May 16, 2018).

9

Claim 6 of the '752 Patent is limited to the detection, decoding, and handling of data, and reacting to a user's input in response, as performed by known (and expressly referenced) technologies.  But this type of result-focused, functional language is not patent-eligible because it threatens to monopolize the abstract idea itself.  *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1265 (Fed. Cir. 2016), *cert. denied sub nom. Affinity Labs of Texas, LLC v. DIRECTTV, LLC*, 137 S. Ct. 1596 (2017) ("[C]laims that are 'so result-focused, so functional, as to effectively cover any solution to an identified problem' are frequently held ineligible under section 101." (citing *Elec. Power Group*, 830 F.3d at 1353-54)); *Ameranth,* 842 F.3d at 1241; *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("The claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way.").  Claim 6 is directed to abstract, patent-ineligible subject matter

Other courts have found similar claims to be ineligible.  Recently in *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, the Federal Circuit affirmed the patent-ineligibility of claims directed to using bar codes and QR codes to retrieve information about pieces of mail.  873 F.3d 905 (Fed. Cir. 2017) ("*Secured Mail*").  In *Secured Mail*, the claims sought to cover "a method whereby a barcode is generated, affixed to a mail object, and sent through the mail system" and "upon receipt, the barcode is scanned, and data corresponding to the sender is sent to the recipient over the network and displayed on the recipient's device."  873 F.3d at 910-11.  Like the Patents-in-Suit, the claims were "not limited to any particular technology of generating, printing, or scanning a barcode, of sending a mail object, or of sending or receiving the recipient-specific information over a network."  *Id.* at 911. The Federal Circuit concluded that "each step of the process [was] directed to the abstract process of communicating information about a mail object using a personalized marking," in particular "QR Codes."  *Id.*  Since the claims were "non-specific and

10

lack[ed] technical detail," employing "well known" technology and hardware, the Federal Circuit concluded that the claims lacked an inventive concept under Section 101.  *Id.* at 912.

The Federal Circuit reached the same conclusion in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,* where it affirmed the ineligibility of claims generally reciting "a method of 1) extracting data from hard copy documents using an automated digitizing unit such as a scanner, 2) recognizing specific information from the extracted data, and 3) storing that information in a memory."  776 F.3d 1343, 1345 (Fed. Cir. 2014) ("*Content Extaction*").  The Federal Circuit agreed with the district court, concluding that "the claims of the asserted patents are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory[,]" and noting that the "concept of data collection, recognition, and storage is undisputedly well-known.  Indeed, humans have always performed these functions."  *Id.* at 1347.  The inclusion of a scanner in the claims at issue in *Content Extraction* did not alter the subject matter's abstract nature, which the Federal Circuit analogized to the patents in *Alice* that "also required a computer that processed streams of bits, but nonetheless were found to be abstract."  *Id.*  Little separates the asserted claims from the analysis of *Content Extraction*.  While those claims were directed to "data collection, recognition, and storage" (*Id.*), the asserted claims are directed to data recognition and *retrieval*.  There is no defensible distinction in the abstract nature of the respective claims, where one sought to claim 'storage' of recognized data and the instant claims instead 'retrieve' data based on recognized data.

Claim 6 of the '752 is no less abstract than the subject matter already found invalid and unpatentable by the Federal Circuit in *Content Extraction* and *Secured Mail*.  The Claim includes no specific limitations or steps informing the process of extracting or decoding data from the symbology; nor does it inform how the "automatic" detection or requests for user input could be accomplished.  Each of the steps required to fulfill the claimed method are instead directed to

generic, conventional ideas of seeing an image, detecting the existence of a symbol or barcode that might represent data, interpreting that symbol, then taking action in response to the decoded symbol. *E.g., Cyberfone Sys., EEC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (finding claim directed to "the well-known concept of categorical data storage, i.e., the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible"). The patentee's reference to well-known components to accomplish these functions fails to make the claimed subject matter any less abstract. *E.g.*, *Ultramercial,* 772 F.3d at 716 (noting that "the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101") (citation omitted).

By only claiming the desired result—recognizing and retrieving information associated with a pattern like a barcode — without describing any specific roadmap for doing so, Claim 6 of the '752 Patent falls short of claiming eligible subject matter under Section 101. *See Internet Patents,* 790 F.3d at 1348; *Secured Mail,* 873 F.3d at 910-11.

### B.      The Remaining Claims of the Patents-in-Suit are Also Abstract and Invalid

Courts may analyze representative claims when other asserted claims are "substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348. Notwithstanding, the remaining asserted claims of the Patents-in-Suit as substantially similar to Claim 6 of the '752 Patent, and they -- and the remaining claims not specifically asserted -- are similarly linked to the same patent-ineligible abstract idea of data recognition and retrieval.

In addition to Claim 6 of the '752 Patent, Symbology's Complaint alleges infringement of Claim 6 of the '369 Patent and Claim 6 of the '190 Patent. *See* Complaint, at ¶ 37 (alleging infringement of Claim 6 of the '369 Patent); ¶ 51 (Claim 6 of the '190 Patent); *and see id.* at ¶ 23 (Claim 6 of the '752 Patent). Each of the other asserted claims is substantively identical to Claim

6 of the '752 Patent, using slightly different terms that do not in any way transform the abstract nature of the claim. *See* Appendix A (showing changes from '752 to '369; deleting '752's language "of the object" in Claim 1 of the '369; replacing "about the object" with "about the digital image"); Appendix B (showing changes from '752 to '190; replacing "portable electronic device" with "portable device"; replacing "object" with "digital image"). The analysis under *Alice* does not depend on any of the subject differences, which consequently do not affect the resulting patent ineligibility of the asserted claims.

Further, the remaining claims of the Patents-in-Suit not specifically asserted in the Complaint are also patent-ineligible under *Alice*. The remaining claims recite insignificant pre- or post-solution activity, such as permitting the user to select presets ('752 Claims 2 and 3), having the visual detection system run in the background (*id.* at Claim 4), or having the user trigger the visual detection device (*id.* at Claim 7). *And see, e.g.,* '752 Patent at cls. 2, 3, 4, 7-16, 17-23, and 24-28; '369 Patent at cls. 2, 3, 4, 7-16, 17-23, and 24-28; '190 Patent at cls. 2, 3, 4, 7-16, and 17-19, 20. These remaining claims seek to lay claim the same abstract concept of data recognition and retrieval, adding only token variations to the claims discussed in detail herein. These token pre- and post-solution activities do not meaningfully limit the Patents-in-Suit. *See, Mayo,* 566 U.S. 66 at 75-76,78-79; *and see id.* at 79 ("Such a broad and general limitation does not impose meaningful limits on the claim's scope."); *see also e.g., Bilski,* 561 U.S. at 610; *Diamond v. Diehr,* 450 U.S. 175, 191-92 & n.14 (1981); *Parker v. Flook,* 437 U.S. 584, 595 n.18 (1978); *Fort Props., Inc. v. Am. Master Lease LLC,* 671 F.3d 1317, 1323 (Fed. Cir. 2012).

The token limitations differentiating the balance of claims in the Patents-in-Suit from those discussed above do nothing to render the same patent eligible or directed towards something more tangible than data recognition and retrieval, and fail the first step of the *Alice* test for the same reasons.

### C.    The Patents-in-Suit Do Not Have a Transformative Step

Once the Court determines that claims are directed to an abstract step, the second step of the *Alice* test considers whether the claims contain "an 'intentive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S.Ct. at 2357.  Any such "additional features" must be "more than 'well-understood, routine, conventional activity.'" *Id.* (quoting *Mayo*, 566 U.S. at 79–80).[6]

Claim 6 of the '752 Patent does not add any "additional features" at all – much less features that amount to "more than a well-understood, routine, conventional activity" sufficient to qualify as an "inventive concept." *Ultramercial*, 772 F.3d at 715 (quotation omitted).  The '752 Patent does not – nor could it – claim that the requisite steps of recognizing and retrieving data were in any way new or part of the contribution of the Patents-in-Suit.  Instead, the common specification repeatedly describes the use of conventional, well-known components and processes to accomplish the steps of the asserted claims, from the claimed "portable electronic device," and extending through the application performing any processing and to the symbology itself.

The "portable electronic device" is disclosed as literally any portable electronic device including "both applications and imaging systems." ('752 Patent, at 1:58-61, including "Apple Computer's iPhone, Google's Droid, and various mobile devices from Motorola").  These generic "portable electronic devices" are described as running readily-available applications to perform the claimed methods detection and decoding functions.  *See, e.g., id.* at 3:31-33 ("Examples of applications that allow scanning include Neomedia's Neo Reader, Microsoft's Smart Tags, Android's Shop Savvy, Red Laser, ScanBuy, etc.").  And these applications are used to scan symbologies used by the public for literally *half a century*, including barcodes.  *See, e.g., id.* at

---

[6]    *Four Winds Interactive LLC v. 22 Miles, Inc.*, No. 16-CV-00704-MSK-STV, 2017 WL 4334074, at *9 (D. Colo. Mar. 28, 2017)

2:57-61 ("Using any applicable visual detection device (e.g., a camera, scanner or other device)… the user may select an object by scanning or capturing an image of symbology (e.g., barcodes) associated with the object"); *and see, e.g.,* U.S. Patent No. 2,612,994 (issued Oct. 7, 1952, titled "Classifying Apparatus and Method"); U.S. Patent No. 5,726,435 (issued Mar. 10, 1998, regarding accused QR code).

The information decoded from the symbology is then sent to a remote server, again composed of generic components, implemented "in various forms of hardware, software, firmware, special purpose processors, or a combination thereof." *Id.* at 9:65-10:1.   The specification provides examples of potential "remote servers" – websites visited by millions of visitors in the United States each day, "such as Amazon.com." *Id.* at 5:38-42.   The communications with the remote server are conveyed using an equally conventional infrastructure, composed of generic components including "a server 12, a storage medium 14, a portable electronic device 16, one or more satellites 18, one or more satellite dishes 20, one or more mobile terminal communication towers 22, [and] one or more Wi-Fi towers 24." *Id.* at 3:61-67; *and see id.* 4:7-16 (The portable electronic device and server may be connected by "any suitable means" including "the Internet").   Finally, the system purports to ask the user for direction as to whether to act upon a detected symbology. *See, e.g.,* Complaint, at ¶ 29; *and see* '752, at 11:18-22 ("the symbology management module may prompt the user as to whether he or she wishes to pursue the decoding of the symbology[.]").

Throughout these systems and processes, no specialized components or applications are required – much less disclosed – by the specification or the claims.   Courts have repeatedly held that the inclusion of generic hardware or software components, such as those described in the Patents-in-Suit, do not render an abstract idea patent-eligible. *See, e.g., buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information

over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment.  Such a limitation has been held insufficient to save a claim in this context."); *cf. In re Salwan,* 681 F. App'x 938, 941 (Fed. Cir. 2017) ("Given that the claims are directed to well-known business practices, the claimed elements of a generic 'network,' 'computer program,' 'central server,' 'device,' and 'server for processing and transferring' are simply not enough to transform the abstract idea into a patent-eligible invention.").

The Patents-in-Suit fail to describe any innovative mechanism to achieve the purported results in a non-abstract way.  *See, e.g., Alice*, 134 S. Ct. at 2359.  Nor do the Patents-in-Suit "purport to improve the functioning of the computer itself."  *Id.* at 2359.  Instead, the Patents-in-Suit claim the advantage disclosed is the mitigation of 'difficulty' "select[ing] the appropriate application for executing the scanning functions."  '752 Patent, at 3:36-39.  But claiming a more convenient way to perform an abstract idea using computers as a tool is not a technological solution, and the Patents-in-Suit fail to disclose any non-conventional mechanism for achieving the purported advantage. *See Intellectual Ventures I*, 792 F.3d at 1367 ("[Claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept."); *see also Phoenix Licensing EEC. v. Consumer Cellular, Inc.*, No. 2:16-CV-0152-JRG-RSP, 2017 WL 1065938, at *23 (ED. Tex. Mar. 8, 2017) ("Problems such as 'substantial amount of human involvement,' . . . [and] lack of an "effective distribution solution' ... are industry-related problems, not the type of true technological problems solved by inventions held to be patent-eligible by the Federal Circuit.") (emphasis in original).

The claims of the Patents-in-Suit, whether considered as individual steps or as a whole, fail to add "significantly more" to the abstract idea of data recognition and retrieval.  The claims of the

Patents-in-Suit are therefore invalid, as they lack any inventive concept that transforms the abstract idea of data recognition and retrieval into a patent-eligible invention.[7]

### D.    The Patents-in-Suit Threaten to Preempt the Field

Concern over pre-emption over a field "undergirds [the] § 101 jurisprudence." *Alice*, 134 S. Ct. at 2358.  The claims of the Patents-in-Suit are unbounded, and could be implemented using virtually any device capable of taking a photograph, any conventional scanning or decoding application, and any generic server capable of processing information requests.  The scope of the asserted claims thereby threatens to preempt all methods for recognizing and retrieving data based on a pattern (including barcodes, which have been in use for over half a century).  *See, e.g., Loyalty*

---

[7] Nor could any amendment contend there is evidentiary support for the presence of such an 'inventive concept,' including at least because Symbology cannot argue there is any possible "inventive" aspect to using a well-known, generic process (*e.g.*, decoding a QR code, much less a barcode) to access a website.  *See* '752 Patent, at 4:47-55 ("[T]he portable electronic device 16 may be configured to capture an image of the barcode 30 and decode the barcode to acquire the associated identification code of the object.  *Using standard and existing computer processing power and software solutions* such as Attrasoft Image recognition software, or optical character recognition software (OCR software such as OmniPage or ReadIris), the image or name of the object may be decoded to determine the identity of the object."); *id.* at 3:31-33 ("Examples of applications that allow scanning include Neomedia's Neo Reader, Microsoft's Smart Tags, Android's Shop Savvy, Red Laser, ScanBuy, etc."); Complaint, at ¶¶ 28 ("[T]he information received by the user and displayed on the portable electronic device … includes a website providing additional information[.]"), 29, 42-43, 55-57; *see also, e.g.,* "Using QR Codes," YouTube.com, *available at* https://www.youtube.com/watch?v=IphTJHiKGos (posted Jan. 27, 2009) (last visited May 18, 2018); "Introduction to QR Codes", YouTube.com, *available at* https://www.youtube.com/watch?v=LMKLwFEiwOc (posted Aug. 20, 2009) (last visited May 18, 2018) (at time code 0:14, "They [QR codes] *often feature URLs that direct users to sites* that provide more information about the QR tagged object or place, thus hyperlinking the physical world to the Internet." (emphasis added)); "QR Codes Everywhere," YouTube.com, *available at* https://www.youtube.com/watch?v=2vS3R2u7sXA (posted Dec. 22, 2008) (last visited May 18, 2018) (at timecode 0:20 "In the UK, they [QR codes] are expected to be the *hottest trend in 2009*" (emphasis added)); *id.* at timecode 0:57 ("All they have to do is grab a phone that has a barcode scanner on it, and *almost all phones shipping to the States now from Nokia include this*, this is the Google phone – they have a project called Zebra Crossing – iPhone has *a ton of applications*" (emphasis added)); "QR Code Business Cards," YouTube.com, *available at* https://www.youtube.com/watch?v=VEuX23iy2A4 (posted Sept. 25, 2009) (last visited May 16, 2018).

*Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature, they [did] not provide any significant description of the particular means by which the various recited functions are performed," and "[a]ll that [was] disclosed [was] the ultimate objective"). The patentee chose to describe the invention at a functional, high-level in an effort to cover all methods of data recognition and retrieval. As a result, the claims create a high risk of preemption, and are invalid under Section 101.

## IV.   CONCLUSION

For the reasons set forth above, each asserted claim of the Patents-in-Suit is not directed to patent-eligible subject matter, and is therefore invalid under Section 101.

Dated: May 31, 2018                    Respectfully Submitted,

*/s/ James Beard*
Garret Leach
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email: garret.leach@kirkland.com

James Beard
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1689
Facsimile:    (415) 439-1500
Email: james.beard@kirkland.com

***Attorneys for Defendant***
***Otter Products, LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 31, 2018, a true and correct copy of the foregoing document

was served via CM/ECF to all counsel of record.

<u>*/s/ James Beard*</u>
James Beard