## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**SYMBOLOGY INNOVATIONS LLC,**

       Plaintiff,

  v.

**OTTER PRODUCTS, LLC,**

       Defendants.

C.A. No. 1:18-cv-00879-MEH

**TRIAL BY JURY DEMANDED**

## PLAINTIFF SYMBOLOGY INNOVATIONS LLC'S OPPOSITION TO DEFENDANT OTTER PRODUCTS, LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

# **Table of Contents**

I.   NATURE AND STAGE OF THE PROCEEDINGS .............................................................5

II.   SUMMARY OF THE ARGUMENT .............................................................................5

III.   THE PATNETS-IN-SUIT.............................................................................................6

IV.   APPLICABLE LAW .....................................................................................................7

   A.   Motion to Dismiss for Failure to State a Claim ............................................................7

   B.   Patent Eligibility under 35 U.S.C. § 101 ......................................................................9

   C.   Burden of proof of patent invalidity ...........................................................................12

V.   ARGUMENT ...............................................................................................................12

   A.   The Patents-in-Suit are directed to Patent Eligible Subject Matter.............................12

     a)   Step 1: The Asserted Claims are not drawn to an abstract idea ...............................12

     b)   The Remaining Claims are not Directed to an Abstract Idea....................................18

     c)   Step 2: Claim 1 recites an inventive concept ...........................................................18

VI.   CONCLUSION .............................................................................................................21

## Table of Cases

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*,
  151 F. Supp. 3d 778 (N.D. Ohio 2015) ...............................................................11

*Alice Corp. Pty. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ........................................................................8, 9, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................7

*Association for Molecular Pathology v. Myriad Genetics, Inc.*,
  133 S.Ct. 2107 (2013) .........................................................................................8

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ........................................................................23

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) .............................................................8, 10, 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................7

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ...........................................................................................9

*California Inst. of Tech. v. Hughes Commc'ns Inc.*,
  59 F. Supp. 3d 974 (C.D. Cal. 2014) ...............................................................11

*Chamberlain Grp., Inc. v. Linear LLC*,
  114 F. Supp. 3d 614 (N.D. Ill. 2015) .................................................................9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ........................................................................15

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed.Cir. 2011) ..........................................................................9

*DataTern, Inc. v. Microstrategy, Inc.*,
  No. CV 11-11970-FDS, 2015 WL 5190715  (D. Mass. Sept. 4, 2015) ............11

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ..........................................................9, 10, 17, 18

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (2016) ..................................................................................passim

*FairWarning IP, LLC v. Iatric Sys., Inc.*,

839 F.3d 1089 (Fed. Cir. 2016) ......................................................................................8

*Front Row Techs., LLC v. NBA Media Ventures, LLC*,
No. CIV 10-0433 JB/SCY, 2016 WL 5404094  (D.N.M. Aug. 30, 2016)..............................11

*Gottschalk v. Benson*,
409 U.S. 63 (1972)...........................................................................................................9

*In re Bill of Lading Transmission & Processing Sys. Patent Lit.*,
681 F.3d 1323 (Fed. Cir. 2012)........................................................................................7

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016)..........................................................................................9

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016).................................................................................9, 10

*Microsoft Corp. v. i4i Ltd. P'ship*,
564 U.S. 91 (2011).................................................................................................11, 20

*Perdiemco, LLC v. Industrack LLC*,
No. 2:15-CV-1216-JRG-RSP, 2016 WL 5719697 (E.D. Tex. Sept. 21, 2016) ....................10

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017)......................................................................................15

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017).................................................................................15, 16

*Smartflash LLC v. Apple Inc.*,
No. 6:13CV447-JRG-KNM, 2015 WL 661174 (E.D. Tex. Feb. 13, 2015)...........................10

*Wolf v. Capstone Photography, Inc.*,
No. 2:13-CV-09573, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014).....................................11

## Statutes

35 U.S.C.  § 101.......................................................................................................passim

35 U.S.C.  § 282.............................................................................................................11

35 U.S.C.  § 271.............................................................................................................20

## Rules

Rule 12(b)(6) of the Federal Rules of Civil Procedure ..........................................................5, 7

## I.   NATURE AND STAGE OF THE PROCEEDINGS

Symbology Innovations LLC's ("SI") filed this lawsuit on April 13, 2018 alleging the infringement U.S. Patent Nos. 8,424,752 (the "'752 patent"); 8,651,369 (the "'369 patent"); 8,936,190 (the "'190 patent") (collectively the "Patents-in-Suit"). In response, Otter Products, LLC ("OtterBox" or "Defendant") filed a Motion to Dismiss SI's complaint for failure to state claim under Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss") on May 31, 2018.

## II.   SUMMARY OF THE ARGUMENT

OtterBox alleges that the Patents-in-Suit are purportedly invalid under Section 101 of the Patent Act. *See* Dkt. No. 13 at p. 6. Particularly, OtterBox incorrectly contends that the claims are directed to the abstract idea of data recognition and retrieval. *Id*. A more thorough analysis of the Patents-in-Suit demonstrates that OtterBox is mistaken. Contrary to OtterBox's contentions, the claims of the Patents-in-Suit are directed to improvements in computer-related technology as discussed by the Federal Circuit in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).The technology covered by the Patents-in-Suit improves the manner in which an electronic device processes symbology associated with an object through the performance of particular steps in order to provide information about the object to a user of the device. As such, the claims are not directed to an abstract idea; but rather address a specific issue within computer technology. In particular, the technology covered by the Patents-in-Suit enhanced existing portable devices with the information retrieval software applications described therein. Accordingly, the combination of steps and/or functionalities recited by the claims of the Patents-in-Suit resulted in the enhancement or improvement of electronic devices at the time of the invention.

In any event, SI is filing an Amended Complaint concurrently with this opposition to the Motion to Dismiss including additional allegations which taken as true, would directly affect the

district court's patent eligibility analysis and prevent the court from resolving the eligibility question as a matter of law which taken as true, would directly affect the district court's patent eligibility analysis and prevent the court from resolving the eligibility question as a matter of law. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126–27 (Fed. Cir. 2018) ("We have held that patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6).")

In view of the foregoing and the reasons set forth below the Court should deny OtterBox's Motion to Dismiss.

## III.   THE PATNETS-IN-SUIT

The Patents-in-Suit are similar in scope and disclose systems and methods for enabling a portable electronic device to retrieve information about an object—such as an article of commerce, product, service, or any item associated with various types of symbology—when the object's symbology is detected. In the Complaint, SI asserted claims 1, 5 and 6 of each of the Patents-in-Suit, each of which include similar limitations and as such, are similar in scope (collectively referred to as the "Asserted Claims").

The Patents-in-Suit address and solve a problem existent within computer technology at the time of the invention. Namely, improving the manner in which an electronic device processes symbology associated with an object through the performance of particular steps and provides information about the object to a user of the device, thus making existing electronic devices at the time of the invention more dynamic and efficient. *See* '752 patent, 1:65-2:16. Moreover, the claimed systems and methods allow for the automatic detection of symbology; alerting a user whether symbology has been detected; and asking whether decoding of the symbology is desired. *See* '752 patent, 11:25-34. As noted in the specification, portable devices at the time of the

invention could be "enhanced with software applications to enable information retrieval procedures as described in the present disclosures." *Id*. at 3:50-55. As such, the claimed methods and systems covered by the Patents-in-Suit address and overcome a particular problem within computer technology. Defendant uses such methods and systems and as such, infringes the Patents-in-Suit.

It is worth noting that neither the parent patent nor the continuation applications claiming priority to the Patents-in-Suit (collectively, the "Patent Family"), were rejected under 35 U.S.C. § 101 as being directed to patent-ineligible subject matter during the corresponding prosecution. *See* Exhibits A-H – Office Actions for each member of the Patent Family. The claims covered by the Patent Family are generally similar in scope and were filed between 2010 and 2017. In total, the Patent Family comprises seven applications that have matured into patents; and one application that is currently pending. None were rejected as being directed to an abstract idea. This is compelling and persuasive evidence from the United States Patent and Trademark Office that the Patents-in-Suit are not directed to patent ineligible subject matter.

By focusing of individual components of the claims OtterBox contends that the Patents-in-Suit do nothing more than suggest the use of conventional components to perform generic functions in the place of a human. *See* Dkt. No. 13 at p. 6. As discussed below, however, taken together as an ordered combination, the claims recite an invention that is neither routine nor conventional.

## IV.    APPLICABLE LAW
### A.  Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678). In other words, plausibility should not be treated as a "probability requirement at the pleading state; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" the defendant is liable for the misconduct alleged. *In re Bill of Lading Transmission & Processing Sys. Patent Lit.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) (quoting *Twombly*, 550 U.S. at 556).

Patent eligibility can be determined at the Rule 12(b)(6) stage. *Aatrix Software*, 882 F.3d at 1125 (citations omitted). This is true only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law. As the Federal Circuit has explained, "plausible factual allegations may preclude dismissing a case under § 101 where, for example, 'nothing on th[e] record ... refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6).'" *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016)). If there are claim construction disputes at the Rule 12(b)(6) stage, the court must proceed by adopting the non-moving party's constructions, *Bascom*, 827 F.3d at 1352; or the court must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction. *Aatrix Software*, 882 F.3d at 1125 (citations omitted).

### B. Patent Eligibility under 35 U.S.C. § 101

Section 101 of the Patent Act defines the subject matter eligible for patent: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." *See* 35 U.S.C. § 101. The judicially recognized exceptions from this provision are for "[l]aws of nature, natural phenomena, and abstract ideas." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2354 (2014) (citing *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2116 (2013)). These exceptions represent "the basic tools of scientific and technological work." *Alice,* 134 S.Ct. at 2354 (quoting *Ass'n for Molecular Pathology*, 133 S.Ct. at 2116). The rationale behind these exceptions is "one of pre-emption" grounded on the "concern that patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Id.* However, the Supreme Court has cautioned unequivocally that "we tread carefully in construing this exclusionary principle lest it swallow all of patent law" because "[a]t some level, all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.*

In *Alice*, the Supreme Court set forth a two-part test for patent eligibility. *Id.* at 2355. First, the court determines whether the claims at issue are directed towards an abstract idea. *Id*. If so, then the court asks "what else is there in the claims before us?" *Id.* To answer the question, the court considers "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* This second step is the search for an "inventive concept," or some element or combination of elements sufficient to ensure that the claim in practice amounts to "significantly

more" than a patent on an ineligible concept. *Id.*; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014).

In determining whether the claims are directed to an abstract idea, the Supreme Court has recognized, that "fundamental economic practice[s]," *Bilski v. Kappos*, 561 U.S. 593, 611 (2010), "method[s] of organizing human activity," *Alice*, 134 S. Ct. at 2356, and mathematical algorithms, *Gottschalk v. Benson*, 409 U.S. 63, 64 (1972), are abstract ideas. *See also*, *DDR Holdings, LLC*, 773 F.3d at 1256. Courts have also found that processes that can be "performed mentally" or that are "equivalent of human mental work" are directed to abstract ideas. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed.Cir.2011); *see also Chamberlain Grp., Inc. v. Linear LLC*, 114 F. Supp. 3d 614, 626 (N.D. Ill. 2015). At this step, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).

In *McRO* the Federal Circuit unequivocally stated: "We have previously cautioned that courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *Id.* at *7 (citing *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)). Importantly, the "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention" but this is not "a license to delete all computer-related limitations from a claim and thereby declare it abstract." *Perdiemco, LLC v. Industrack LLC*, No. 2:15-CV-1216-JRG-RSP, 2016 WL 5719697, at *5 (E.D. Tex. Sept. 21, 2016), report and recommendation adopted, No. 2:15-CV-727-JRG, 2016 WL 5475707 (E.D. Tex. Sept. 29, 2016) (quotations and citations omitted). Importantly, claims are not directed to an abstract idea if the claimed subject matter does not preempt the use

of the abstract idea on the Internet or on generic computer components performing conventional activities. *Bascom*, 827 F.3d at 1352.

Similarly, claims "purport[ing] to improve the functioning of the computer itself," or "improv[ing] an existing technological process" are not drawn to abstract ideas, *Alice*, 134 S. Ct. at 2358-59; *see also Enfish*, 822 F.3d at 1335. Additionally, the Federal Circuit has recognized that patent claims are not directed to an abstract idea where "the focus of the claims is on the specific asserted improvement in computer capabilities ..., [rather than] on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1336. "If the claims are not directed to an abstract idea, the inquiry ends. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, supra.

At *Alice* step two, courts determine whether the claims encompass "significantly more" than the abstract idea. At this step, courts also look at whether the claims "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet" or whether "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings*, LLC, 773 F.3d at 1257.

In other words, even if the claims are directed to abstract concepts they may still be patent-eligible when the claim limitations "are not necessary or obvious tools" that pre-empt or preclude the use of other solutions in the technological field. *California Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F. Supp. 3d 974, 994 (C.D. Cal. 2014). Furthermore, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. That is, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.*

### C.  Burden of proof of patent invalidity

Patents are entitled to a presumption of validity. *See* 35 U.S.C. § 282. Pursuant to the Patent Act, the party asserting the invalidity of a patent or any claim thereof bears the burden of proof. *Id.* For this reason, a party arguing that a patent claims ineligible subject matter under 35 U.S.C. § 101 must prove this by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011); *see also*, *Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 WL 7639820, at *5 (C.D. Cal. Oct. 28, 2014) ("[P]rior to claim construction, a patent claim can be found directed towards patent ineligible subject matter if the only plausible reading of the patent must be that there is clear and convincing evidence of ineligibility.") (quotations and citations omitted); *DataTern, Inc. v. Microstrategy, Inc.*, No. CV 11-11970-FDS, 2015 WL 5190715, at *7 (D. Mass. Sept. 4, 2015); *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 151 F. Supp. 3d 778, 787 (N.D. Ohio 2015); *Front Row Techs., LLC v. NBA Media Ventures, LLC*, No. CIV 10-0433 JB/SCY, 2016 WL 5404094, at *32 (D.N.M. Aug. 30, 2016).

## V.    ARGUMENT

### A.  The Patents-in-Suit are directed to Patent Eligible Subject Matter

OtterBox incorrectly argues that the asserted claims of the Patents-in-suit fail both steps of the Alice test because each claim is purportedly directed to an abstract idea, and the claims lack any inventive concept sufficient to confer patent eligibility. *See* Dkt. No. 13 at p.11. As discussed below, however, the Patents-in-Suit are directed to improvements in computer-related technology and, as such, are not directed to an abstract idea. As discussed below, however, both arguments are incorrect.

#### a)  Step 1: The Asserted Claims are not drawn to an abstract idea

OtterBox contends that the Asserted Claims, and in particular claim 6 of the Patents-in-Suit, purportedly amount to nothing more than recognizing one piece of information retrieve other

information and as such, exemplify abstract subject matter under Section 101. *See* Dkt. No. 13 at p. 12 In particular, Otterbox argues that the claims seek to achieve nothing more than a logical, generic, functional step, such as would be performed by a conventional computer or by an individual human. *Id.* at p. 14. This argument, however, oversimplifies the technology covered by the Patents-in-Suit. Under the two-part test for determining patent eligibility a court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S.Ct. at 2355. If that threshold determination is met, the court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.*

It must be noted that the Patents-in-Suit are not directed to the type of subject matter that has been invalidated by courts under 35 U.S.C. § 101. For instance, claim 1 of the Patents-in-Suit—which is the claim from which claim 6 indirectly depends from—is  not directed to a fundamental economic practice, a method of organizing human activity, or a mathematical algorithm. Moreover, the limitations of the Asserted Claims cannot be performed mentally and are not the "equivalent of human mental work." *See CyberSource Corp.*, 654 F.3d at 1373. For example, a human mind cannot decode symbology associated that is with an object in order to obtain a decode string using one or more visual detection applications residing on the portable electronic device; send the decode string to a remote server for processing; and receive information about the object from the remote server wherein the information is based on the decode string of the object. Instead, the Patents-in-Suit are directed to solving a problem within computer technology at the time of the invention which cannot be done by a person. As previously noted, the subject matter claimed by the Patents-in-Suit improves the manner in which an electronic device automatically retrieves and decodes information from a symbol that is associated with an

object in order for said information to be displayed on the electronic device. *See* '752 patent, 1:65-
2:16.

OtterBox contends the Asserted Claims are directed to the detection, decoding, and
handling of data, and reacting to a user's input in response, as performed by known technologies.
*See* Dkt. No. 13 at p. 15. However, such characterization is too broad and oversimplifies the claims
since the claims are not directed to any of those actions individually. Such oversimplification omits
the combination of steps that allow an electronic device to automatically detect a symbol and
decode it into information about an object that is subsequently displayed on the device, as recited
in the claims. *See* Asserted Claims. As noted by the U.S. Supreme Court in *Alice*, describing the
claims at such a high level of abstraction and untethered from the language of the claims all but
ensures that the exceptions to § 101 swallow the rule. *See Alice*, 134 S.Ct. at 2354 (noting that "we
tread carefully in construing this exclusionary principle [of laws of nature, natural phenomena, and
abstract ideas] lest it swallow all of patent law").

Furthermore, as explained by the Federal Circuit "the 'directed to' inquiry … cannot
simply ask whether the claims involve a patent-ineligible concept, because essentially every
routinely patent-eligible claim involving physical products and actions involves a law of nature
and/or natural phenomenon…" *Enfish*, 822 F.3d at 1335. "Rather, the 'directed to' inquiry applies
a stage-one filter to claims, considered in light of the specification, based on whether 'their
character as a whole is directed to excluded subject matter.'" *Id*. In *Enfish*, the Federal Circuit also
noted that claims are not directed to an abstract idea if "the focus of the claims is on the specific
asserted improvement in computer capabilities ..., [rather than] on a process that qualifies as an
'abstract idea' for which computers are invoked merely as a tool." *Id*. at 1336. Applying that test,
the Federal Circuit rejected a § 101 challenge because the claims at issue focused on a specific

improvement—a particular database technique—in how computers could carry out one of their basic functions of storage and retrieval of data.

Here, the claims do not merely call for a device that captures an image or detects a symbol. Rather, the Asserted Claims—and particularly claim 1 of the Patents-in-Suit—require an electronic device to detect symbology within an image; send symbology information to the appropriate applications residing on the electronic device for decoding; decode the symbology to obtain a decode string; send the decode string to a server configured to identify one or more objects associated with the symbology; determine the object associated with the symbology using the decode string; and then gather information about that object in order to display it to the user of the electronic device. *See* '752 patent, 3:12-28. Furthermore, the Patents-in-Suit provide for the automatic selection of a scanning application upon recognition of symbology. *Id*. As noted in the Patents-in-Suit, existing portable devices could be enhanced with software applications to enable information retrieval procedures as described in the Patents-in-Suit. *Id*. at 3:50-55. Accordingly, the combination of the aforementioned steps and/or functionalities—as embodied in claim 1 and claims dependent therefrom—resulted in the enhancement or improvement of electronic devices at the time of the invention. In other words, it made the existing electronic devices more dynamic and efficient. Thus, through the performance of the particular steps recited in claim 1, the Patents-in-Suit improve the manner in which an electronic device processes symbology associated with an object and provides information about the object to a user of the device. Therefore, the Patents-in-Suit represent an improvement to computer capabilities and are note directed to an abstract idea.

OtterBox further contends that other courts have found similar claims to be patent ineligible. *See* Dkt. No. 13 at p. 15. The cases discussed by OtterBox, however, are distinguishable from the case at bar. For example, in *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873

F.3d 905 (Fed. Cir. 2017) the patents at issue merely involved methods in which a sender affixed an identifier on the outer surface of a mail object (e.g., envelope or package) and, as such, the Federal Circuit agreed with the district court's analysis that the claims were directed to an abstract idea. *Id.* at 907-09. Furthermore, the Federal Circuit noted that the claims were not directed to an improvement in computer functionality because, for example, the claims were not directed to a new barcode format, an improved method of generating or scanning barcodes, or similar improvements in computer functionality and that the claims merely generically provided for the encoding of various data onto a mail object but did not set out how this is to be performed. *Id*. at p. 910. Here, however, the claims do not require affixing an identifier on the outer surface of an envelope or package or merely encoding data onto a mail object; rather the claims set out a method in which information is presented about an object on a portable electronic device after the performance of specific steps. OtterBox argues that the Asserted Claims merely claim a desired result without describing any specific roadmap for doing so, *see* Dkt. 13 at p. 17, but the Asserted Claims require the performance of particular steps before information is displayed on an electronic device; steps which as discussed above, result in the improvement and enhancement of portable devices at the time of the invention. As such *Secured Mail* is distinguishable from the case at bar.

Additionally, OtterBox relies on *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) to contend that the Asserted Claims are directed to an abstract idea. *See* Dkt. No. 13 at p. 16. In that case the Federal Circuit agreed with the district court that the claims at issue were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" and indicated that the "concept of data collection, recognition, and storage [was] undisputedly well-known […]" since "humans [had] always performed these functions." *Id*. After

16

all, banks had "for some time, reviewed checks, recognized relevant data such as the amount, account number, and identity of account holder, and stored that information in their records." *Id*. As such, the Federal Circuit concluded that the claims were "drawn to the basic concept of data recognition and storage." *Id*. In the case at bar however, the claims are not directed to "functions" that have always been performed by humans or banks as in *Content Extraction*. For example, humans cannot automatically detect symbology associated with an object within an image, decode the symbology to obtain a decode string, send the decode string to a remote server for processing, receive information about the object from the server based on the decode string of the object and display the information, as recited in the Asserted Claims. In other words, unlike banks reviewing checks and storing the information for their records (i.e., data recognition and storage), the claimed steps are not "functions" that have been historically performed by humans. As such, the claims are not directed to an abstract idea as OtterBox contends.

Lastly, it should be noted that the elements of the Asserted Claims, both individually and as an ordered combination, must be considered to determine whether the claims recite an invention that is not merely routine or conventional. *See DDR Holdings*, 773 F.3d at 1259. Here, the ordered combination of the steps recited in the Asserted Claims requires the performance of steps, which as discussed above, result in the improvement and enhancement of portable devices at the time of the invention. Thus, the Asserted Claims are not directed to an abstract idea.

Since the Asserted Claims focus on a specific improvement to computer capabilities the Patents-in-Suit are not directed to an abstract idea as OtterBox contends. *See Enfish*, 822 F.3d at 1335-39 (In which the Court asked whether the focus of the claims is on the specific asserted improvement in computer capabilities or instead on a process that qualifies as an "abstract idea"

for which computers are invoked merely as a tool.) As such, OtterBox contention that the Patents-in-Suit are directed to an abstract idea must be rejected.

### b) The Remaining Claims are not Directed to an Abstract Idea

OtterBox argues in conclusory fashion that the remaining claims of the Patents-in-Suit are also directed to the abstract idea of data recognition and retrieval. *See* Dkt. 13 at pp. 17-18. But aside from providing legal conclusions devoid of any support—such as indicating that the remaining claims only recite insignificant pre- or post-solution activity—OtterBox does not show by clear and convincing evidence that all remaining claims are directed to an abstract idea. *See Microsoft Corp.*, 564 U.S. at 95; *see also*, *Wolf*, 2014 WL 7639820, at *5 ("[P]rior to claim construction, a patent claim can be found directed towards patent ineligible subject matter if the only plausible reading of the patent must be that there is clear and convincing evidence of ineligibility.") Thus, OtterBox's argument as to the remaining claims must be stricken from their Motion to Dismiss for inadequate pleading.

### c) Step 2: Claim 1 recites an inventive concept

In addition, OtterBox's Motion to Dismiss fails because the claims recite an inventive concept. As previously noted, at this step courts also look at whether the claims "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet" or whether "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC*, 773 F.3d at 1257.

The Asserted Claims, and particularly claim 1, are not drawn to a business practice known from the pre-Internet world along with a requirement to perform it on the Internet. On the contrary, claim 1 represent an improvement to computer capabilities, as discussed above. OtterBox argues that the Asserted Claims do not recite an inventive concept. *See* Dkt. No. 13 at p. 19. Particularly,

OtterBox argues that the specification for the Patents-in-Suit "describes the use of conventional, well-known components and processes to accomplish the steps of the asserted claims, from the claimed portable electronic device, and extending through the application performing any processing and to the symbology itself." *Id*. However, this does not represent "a license to delete all computer-related limitations from a claim and thereby declare it abstract." *Perdiemco, LLC*, supra (quotations and citations omitted). OtterBox forgets that the *Alice* Court advised that it "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 134 S.Ct. at 2354. Under OtterBox's overbroad and general interpretation, nearly all inventions would be invalid under 35 U.S.C. § 101.

Furthermore, OtterBox's analysis is improper because it focuses on the individual components recited in the Asserted Claims to reach the conclusion that the claimed components do not improve the functioning of the computer itself. *See* Dkt. 13 at pp. 19-21. In particular, OtterBox's focus on individual components fails to consider the elements of the claims as an ordered combination. Individual elements when viewed on their own may not appear to add significantly more, but when viewed in combination may amount to significantly more than any purported abstract idea. *See Alice*, 134 S.Ct. at 2355. Viewed as a whole or as an ordered combination, the Asserted Claims recite a "specific improvement to the way computers operate". *Enfish*, 822 F.3d at 1336. As discussed above, through the performance of the particular steps recited in the Asserted Claims, and particularly claim 1, the Patents-in-Suit improve the manner in which an electronic device processes symbology associated with an object and provides information about the object to a user of the device. Thus, contrary to OtterBox's contention the Patents-in-Suit improve the functioning of a computer itself.

As noted by the Federal Circuit in *Bascom*, the inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. *See Bascom*, 827 F.3d at 1350. The claims in that case were directed to filtering internet content using a remote, customizable filter. The Federal Circuit agreed with the district court that that filtering content was an abstract idea because it was a longstanding, well-known method of organizing human behavior. *Id*. at 1348. However, the Federal Circuit found the claims eligible under Step 2, stating that they recited a non-conventional and non-generic ordered combination of known, conventional pieces. *Id*. at 1350. The Federal Circuit characterized the inventive concept as "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." *Id*. In particular, Federal Circuit noted that "by taking a prior art filter solution […] and making it more dynamic and efficient […], the claimed invention represented a 'software-based invention[ ] that improve[s] the performance of the computer system itself.'" *Id*. at 1351. Here, OtterBox indicates that the point of novelty of the Patents-in-Suit is the result of providing a convenient way for scanning barcodes. *See* DKT. No. 10 at p. 19. This is false. As explained above, through the performance of the particular steps recited in claim 1, the Patents-in-Suit improve the manner in which an electronic device processes symbology associated with an object and provides information about the object to a user of the device, thus making existing electronic devices at the time of the invention more dynamic and efficient. Therefore, as in *Bascom*, the specific method recited in claim 1 cannot be said to be conventional or generic.

OtterBox further argues that the Patents-in-Suit risk preempting "all methods for recognizing and retrieving data based on a pattern." *See* Dkt. 13 at p. 22. OtterBox's argument exaggerates the scope of the Patents-in-Suit. The Patents-in-Suit would only preempt someone in the United States from performing *each and every step* of the claimed method. After all that is the

right that was granted under the patent statute. *See* 35 U.S.C. § 271. It would not preempt all methods of data retrieval or someone who only scanned or decoded a pattern, or someone who merely displayed information on a display device. In *Bascom* the Federal Circuit concluded that the claims at issue did not preempt all ways of filtering content on the Internet; rather, they recited a specific, discrete implementation of the abstract idea of filtering content. *See Bascom*, 827 F.3d at 1350. In particular, there were no preemption concerns because the patent described how its particular arrangement of elements was technical improvement over prior art ways of filtering such content. *Id*. As explained above, through the performance of the particular method recited in claim 1, the Patents-in-Suit improve the manner in which an electronic device processes symbology associated with an object and provides information about the object to a user of the device, thus making existing electronic devices at the time of the invention more dynamic and efficient. Thus, construed in favor of SI as they must be in this procedural posture, the claims of the Patents-in-Suit do not preempt the use of any purported abstract idea on generic computer components performing conventional activities. *See Bascom*, 827 F.3d at 1352.

In sum, OtterBox did not show by clear and convincing evidence that the Patents-in-Suit are invalid; and since the claims are drawn to a patent-eligible inventive concept, OtterBox's Motion to Dismiss must be denied.

## VI.    CONCLUSION

The Court should deny the Motion to Dismiss because the Patents-in-Suit are not directed to an abstract idea, but rather represent an improvement to computer capabilities. Namely, improving the manner in which an electronic device processes symbology associated with an object through the performance of particular steps in order to provide information about the object to a user of the

device, thus making existing electronic devices at the time of the invention more dynamic and efficient.

Thus, for the reasons set forth above, the Motion to Dismiss should be denied.


Dated: June 13, 2018                              Respectfully Submitted,

                                                  /s/Eugenio J. Torres-Oyola
                                                  Eugenio J. Torres-Oyola
                                                  USDC No. 215505
                                                  **Ferraiuoli LLC**
                                                  221 Plaza, 5th Floor
                                                  221 Ponce de León Avenue
                                                  San Juan, PR 00917
                                                  Telephone: (787) 766-7000
                                                  Facsimile: (787) 766-7001
                                                  Email: etorres@ferraiuoli.com

                                                  Jean G. Vidal Font
                                                  USDC No. 227811
                                                  **Ferraiuoli LLC**
                                                  221 Plaza, 5th Floor
                                                  221 Ponce de León Avenue
                                                  San Juan, PR 00917
                                                  Telephone: (787) 766-7000
                                                  Facsimile: (787) 766-7001
                                                  Email: jvidal@ferraiuoli.com

                                                  **ATTORNEYS FOR PLAINTIFF**
                                                  **SYMBOLOGY INNOVATIONS LLC**


## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2018, a true and correct copy of the foregoing document was served via CM/ECF to all counsel of record.

                                                  /s/Eugenio J. Torres-Oyola
                                                  Eugenio J. Torres-Oyola