**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**


SYMBOLOGY INNOVATIONS LLC

     Plaintiff,                          CIVIL ACTION NO. 1:18-cv-00879-WJM

     v.

OTTER PRODUCTS, LLC

     Defendant.

---

**OTTER PRODUCTS, LLC'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT UNDER
FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM**

---

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      **Background and Patents-in-Suit** ...................................................................... **2**

II.     **Applicable Law** ............................................................................................. **3**

     A.     Dismissal Pursuant to Rule 12(b)(6) ..................................................... 3

     B.     Failure to State a Claim Where a Patent Claims Ineligible Subject Matter ........... 4

     C.     Patent Eligibility Under 35 U.S.C. § 101 ............................................... 4

III.    **Argument** .................................................................................................... **5**

     A.     The Patents-in-Suit Are Directed to an Abstract Idea ............................. 6

     B.     The Remaining Claims of the Patents-in-Suit are Also Abstract and Invalid ................................................................................................ 10

     C.     The Patents-in-Suit Do Not Have a Transformative Step ...................... 12

     D.     The Patents-in-Suit Threaten to Preempt the Field ............................... 14

     E.     The Amended Complaint Fails to Provide Factual Allegations or Create a Reasonable Inference That the Claims Are Directed to an Inventive Concept ............................................................................................. 15

IV.    **Conclusion** ................................................................................................. **15**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)..................................................................................6

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016), *cert. denied sub nom. Affinity Labs of Texas,*
    *LLC v. DIRECTTV, LLC*, 137 S. Ct. 1596 (2017) ...................................................8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014)...................................................................................... *passim*

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016)..................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................3, 4, 15

*Bancorp Servs. LLC v. Sun Life Assurance Co.*,
    687 F.3d 1266 (Fed. Cir. 2012).............................................................................4, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................3

*Bilski v. Kappos*,
    561 U.S. 593 (2010)...................................................................................................4

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014)...............................................................................13

*Concaten, Inc. v. Ameritrak Fleet Sols., LLC*,
    131 F. Supp. 3d 1166 (D. Colo. 2015), *aff'd*, 669 F. Appx 571 (Fed. Cir.
    2016) ..........................................................................................................................6

*Content Aggregation Sols. LLC v. Blu Prods., Inc.*,
    No. 316-cv-00527-BEN-KSC, 2016 WL 6995490 (S.D. Cal. Nov. 29, 2016) .........5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    777 F.3d 1343 (Fed. Cir. 2014)...................................................................... *passim*

*Cyberfone Sys., EEC v. CNN Interactive Grp., Inc.*,
    558 F. App'x 988 (Fed. Cir. 2014) .........................................................................10

*Diamond v. Diehr*,
    450 U.S. 175 & n.14 (1981)........................................................................................1

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)..................................................................................7

*Genetic Techs. Ltd. v. Merial LLC.*,
   No. 2015–1202, 2016 WL 1393573 (Fed. Cir. Apr. 8, 2016) ...................................4

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)............................................................................5, 14

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)........................................................................4, 8, 10

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   66 F. Supp. 3d 829 (E.D. Tex. 2014)......................................................................14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012)..................................................................................1, 6, 12

*Multimedia Plus, Inc. v. Playerlync, LLC*,
   198 F. Supp. 3d 264 (S.D.N.Y. 2016), *reconsideration denied*, No.
   14CV8216, 2016 WL 5794779 (S.D.N.Y. Oct. 4, 2016) ........................................6

*In re Salwan*,
   681 F. App'x 938 (Fed. Cir. 2017) .........................................................................13

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017)........................................................................8, 9, 10

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)................................................................................8

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014)......................................................................7, 10, 12

**Statutes**

35 U.S.C. § 101 ............................................................................................4, 10, 14

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................3

Defendant Otter Products, LLC ("OtterBox") respectfully moves this Court to dismiss Plaintiff Symbology Innovations LLC's ("Symbology's") Amended Complaint for failure to state a claim upon which relief can be granted.  On April 13, 2018, Symbology filed suit against OtterBox alleging patent infringement of United States Patent Nos. 8,424,752 (the "'752 Patent"); 8,651,369 (the "'369 Patent"); and 8,936,190 (the "'190 Patent"; collectively, the "Patents-in-Suit").  (*See* ECF No. 1.)  Symbology filed an Amended Complaint in response to OtterBox's original motion to dismiss on June 13, 2018.  (*See* ECF No. 21 ("Amended Complaint"); *and see* ECF No. 13 (Motion to Dismiss) *and* ECF No. 22 (denying motion as moot).)

Long-standing precedent, tracing to the Supreme Court's decision in *Diamond v. Diehr*, holds that "laws of nature, natural phenomena, and abstract ideas are not patentable."  450 U.S. 175, 185 (1983); *and see Mayo Collaborative Servs. v. Prometheus Labs., Inc*., 566 U.S. 66, 71 (2012) ("[A]bstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work.").  Notwithstanding, the asserted patents seek to lay claim to a monopoly over and preempt well-known, routine, conventional abstract ideas in the fields of data recognition and retrieval, doing nothing more than suggesting use of conventional components to perform generic functions in the place of a human.  *See Mayo*, 566 U.S. at 71.  But these are abstract ideas "free to all men and reserved exclusively to none," leaving the asserted patents invalid under Section 101 of the Patent Act.  *Id*.

Counsel for the parties met and conferred regarding the instant motion on June 22, 2018. Although both parties were willing to work cooperatively should amendment prove possible, Plaintiff believed its Amended Complaint was sufficiently pled and did not identify additional amendments that would cure the deficiencies raised in this motion.  Accordingly, OtterBox respectfully requests that the Court dismiss the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## I.    BACKGROUND AND PATENTS-IN-SUIT

Symbology's Amended Complaint alleges that OtterBox has infringed the Patents-in-Suit through "us[e] and/or incorporat[ion of] Quick Response (QR codes) into product packaging in a manner covered by one or more claims of" the Patents-in-Suit, based on alleged "internal[] testing of the functionality of [] QR codes in connection with product packaging."  (ECF No. 21-1, Amended Complaint ¶¶ 26, 40, and 54.)   The Patents-in-Suit purport to be directed towards a method "for enabling a portable electronic device to retrieve information about an object when the object's symbology, e.g., a barcode, is detected." (ECF No. 21-2, '752 Patent, at Abstract.)  Each Patent-in-Suit shares an identical abstract and specification, with substantively identical titles[1], and trace priority through continuation applications to Application No. 12/882,616.[2]  Moreover, each asserted claim[3] is substantively and functionally identical.  *See infra*, at Section III.B.

The asserted claims perform steps that could be performed in the mind of an individual, such as a librarian.  For example, Claim 1 of the '752 Patent merely describes the process of recognizing information based on patterns (an act any individual reading this sentence performs without conscious thought) and retrieving related information:

(1)    **capturing** an image with a generic 'portable [electronic] device' (*e.g.,* viewing a book label);

---

[1]    The '369 Patent is titled "System and method for presenting information about an object on a portable device", with the '752 and '190 Patents titled "System and method for presenting information about an object on a portable *electronic* device." *See* Patents-in-Suit (emphasis denoting difference added).

[2]    *See generally* Patents-in-Suit, at Abstract, Specification; *and see id.* at Related U.S. Application Data.

[3]    Symbology's Amended Complaint alleges infringement of Claim 1 of the '752 Patent, Claim 1 of the '369 Patent, and Claim 1 of the '190 Patent.  ECF No. 21, at ¶¶ 24 (asserting Claim 1 of the '752 patent), 38 (Claim 1 of the '369 patent), and 52 (Claim 1 of the '190 patent); *and see* ECF Nos. 21-2 ('752 Patent), 21-3 ('369 Patent), and 21-4 ('190 Patent).

(2)     **detecting** symbology (*e.g.*, recognizing a barcode or classification);

(3)     **decoding** that symbology to return information (*e.g.,* interpreting that classification);

(4)     **sending** that information to a generic server for processing and **receiving** information in response from that generic server (*e.g.*, asking a colleague where to find a certain author in the non-fiction section); and

(5)     **displaying** that information received on the 'portable [electronic] device' (*e.g.,* informing a patron where the book would be located).

(*See, e.g.,* ECF No. 21-2, '752 Patent at Cl. 1.)

These steps are individually and collectively directed to the abstract process of recognizing and retrieving information related to patterns long known and used in the art.  The asserted patents claim these underlying abstract ideas *functionally*, rather than presenting concrete and specific improvements that inform how those functions are achieved, and attempt to claim all implementations of the abstract ideas.  And implementation of an abstract idea on a generic computer system "fail[s] to transform that abstract idea into a patent-eligible invention."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357 (2014) ("*Alice*").

## II.     APPLICABLE LAW

### A.     Dismissal Pursuant to Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *and see* Fed. R. Civ. P. 12(b)(6) (providing for dismissal for failure to state a claim upon which relief can be granted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft*, 556 U.S. at 678.  While well-pleaded facts must be taken as true, the Court should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id*. at 678.

### B.   Failure to State a Claim Where a Patent Claims Ineligible Subject Matter

Abstract ideas are not eligible for patent protection, unless the patent includes an inventive concept that transforms the abstract idea into something more.  *See* 35 U.S.C. § 101.  Whether the claims of the Patents-in-Suit are directed to ineligible subject matter under Section 101 is a threshold legal issue, and a question of law that can be decided through a motion to dismiss at the pleading stage before formal claim construction.  *Bilski v. Kappos,* 561 U.S. 593, 602 (2010); *Bancorp Servs. LLC v. Sun Life Assurance Co.,* 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").  Courts routinely find patents invalid under Section 101 based on the pleadings.  *See Genetic Techs. Ltd. v. Merial LLC*., No. 2015–1202, 2016 WL 1393573, at *3 (Fed. Cir. Apr. 8, 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion.").

### C.   Patent Eligibility Under 35 U.S.C. § 101

Under the Supreme Court's decision in *Alice*, determining whether a patent is impermissibly directed to an abstract idea involves a two-part test.  The Patents-in-Suit fail both steps of the *Alice* test.  ***First***, a court must "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea.  *Alice,* 134 S. Ct. at 2355.  Courts "start by ascertaining the basic character of the subject matter."  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) ("*Internet Patents*").  Then a Court must determine "whether the claims focus on a specific means or method that improves the relevant technology or are directed to a result or effect that itself is the abstract idea and merely invoke generic processes

and machinery." *Apple, Inc. v. Ameranth, Inc.,* 842 F.3d 1229, 1241 (Fed. Cir. 2016) (internal quotations omitted).

*Second*, if the claims are directed to an abstract idea, the court asks whether the claims contain "an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S.Ct. at 2357. Transformation of the abstract idea through inclusion of an inventive concept requires "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S.Ct. at 2355 (internal quotations omitted).

Critically, this "inventive concept" must be more than a bare recitation of generic computing hardware already known in the art. *Alice*, 134 S. Ct. at 2358. Neither implementing the idea using "wholly generic computer[s]" or components, nor employing every-day platforms such as the Internet or Apple's iPhone devices, will save claims directed to abstract ideas. *Id.*; *see also, e.g.*, ECF No. 21-2 ('752 Patent at 1:58-61, 4:17-22.) Instead, "[w]here the steps of the claim could be performed by a human being without a computer, the claim is likely directed to an abstract idea." *Content Aggregation Sols. LLC v. Blu Prods., Inc.*, No. 316-cv-00527-BEN-KSC, 2016 WL 6995490, at *3 (S.D. Cal. Nov. 29, 2016); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (analogy to corporate mailroom is "useful").

## III.   ARGUMENT

The asserted claims of the Patents-in-Suit fails both steps of the *Alice* test: The claims are directed to an abstract idea and lacks any inventive concept sufficient to confer patent eligibility. At most, it takes abstract ideas and implements them with off-the-shelf technology—which does nothing to render the claim patent eligible.

## A.       The Patents-in-Suit Are Directed to an Abstract Idea

In order to confirm whether a claim is directed to an abstract idea, "the court must first 'identify and define whatever fundamental concept appears wrapped up in the claim.'" *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013).   The Supreme Court has declined "to delimit the precise contours of the 'abstract ideas' category," *Alice*, 134 S.Ct. at 2357, but courts have found that "a claim is directed to an abstract idea when it describes a fundamental concept or longstanding practice." *Multimedia Plus, Inc. v. Playerlync, LLC*, 198 F. Supp. 3d 264, 268 (S.D.N.Y. 2016) (subsequent history omitted).

The elements of Claim 1 of the '752 Patent, representative of all asserted claims (*see infra* Section III.B), amount to nothing more than recognizing one piece of information ("e.g., a barcode" (ECF No. 21-2, '752 Patent at 1:65-2:1)) to retrieve other information ("information about the object" (*id.* at Cl. 1).[4]   Under the first step of the *Alice* analysis, the 'focus' of Claim 1 is limited to recognition of data in a symbology in order to retrieve related information, with each step merely describing logical, generic, and functional steps in the manipulation of that data: capturing data, detecting data, decoding data, sending data, receiving data, and displaying data. (*See* ECF No. 21-2, '752 Patent at Cl. 1.)

---

[4]   The Federal Circuit has held that a district court need not expressly address each asserted claim where the court concludes particular claims are representative because all the claims are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Faro Bank, Nat'l Ass'n*, 776 F.3d 1343 at 1348 (citation omitted); *see also Concaten, Inc. v. Ameritrak Fleet Sols., LLC*, 131 F. Supp. 3d 1166, 1169-70 n.3 (D. Colo. 2015), *aff'd*, 669 F. Appx 571 (Fed. Cir. 2016) (for purposes of deciding whether a patent is directed to an ineligible abstract idea, the court "may assume that the other claims in the patents do not differ significantly from [a representative claim]," citing *Mayo,* 566 U.S. at 73).

Each of these steps seeks to achieve nothing more than a logical, generic, functional step, such as would be performed by a conventional computer or by an individual human, and does nothing to enhance the technologies known at the time.  Whether considered individually or as part of the larger claim, such broad concepts instead recite "an abstraction – an idea, having no particular concrete or tangible form."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).  Inclusion of a generic computing device and other conventional components, whether a "portable electronic device," a "remote server," a "display device," or "visual detection systems" does not make the claims more tangible.  (*See* ECF No. 21-2, '752 Patent at Cl. 1; *see also id.* at 1:38-61, 2:57-61, 3:29-36, 5:33-42); *Alice*, 134 S.Ct. at 2358.  Claim 1 instead exemplifies abstract subject matter under Section 101, as the Federal Circuit has held that "collecting information, including when limited to particular content (which does not change its character as information)" and "analyzing information by steps people go through in their minds, or by mathematical algorithms" are mental processes that fall within the realm of abstract ideas.  *Elec. Power Group LLC v. Alstom SA*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016).

Moreover, the common specification for the Patents-in-Suit concedes that technology for interpreting, decoding, and interacting with barcodes were commonplace before the purported invention of the claimed subject matter.  (*See, e.g.*, ECF No. 21-2, '752 Patent at 3:29-36.)  The common specification even contemplates that practitioners use conventional, well-known technology and applications to perform each of the steps for capturing, detecting, decoding, and otherwise interacting with data (including from a barcode).  (*See e.g., id.*, 2:64-3:4, 3:31-34, 3:55-60, 4:7-8.)  The alleged shortcomings in the prior art reduces to a matter of convenience: "Since a user may have dozens of applications loaded on his or her portable electronic device, *it may be difficult* to select the appropriate application for executing the scanning functions."  (*Id.* at 3:36-39 (emphasis added).)  But "[u]sing a computer to accelerate an ineligible mental process does not

make that process patent-eligible." *Bancorp*, 687 F.3d at 1279.  Simply put, the applicant sought to automate a process that was purportedly performed manually, but the common specifications are silent as to how to accomplish this supposedly central task.  *See Internet Patents*, 790 F.3d at 1348 (claim directed to patent-ineligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation.").

Claim 1 of the '752 Patent is limited to the detection, decoding, and handling of data, as performed by known (and expressly referenced) technologies.  But this result-focused, functional language is not patent-eligible because it threatens to monopolize the abstract idea itself.  *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1265 (Fed. Cir. 2016), *cert. denied sub nom. Affinity Labs of Texas, LLC v. DIRECTTV, LLC*, 137 S. Ct. 1596 (2017) ("[C]laims that are 'so result-focused, so functional, as to effectively cover any solution to an identified problem' are frequently held ineligible under section 101." (citation omitted); *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("The claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way.").  Claim 1 is directed to abstract, patent-ineligible subject matter.

Other courts have found similar claims to be ineligible.  Recently in *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, the Federal Circuit affirmed the patent-ineligibility of claims directed to using bar codes and QR codes to retrieve information about pieces of mail.  873 F.3d 905 (Fed. Cir. 2017) ("*Secured Mail*").  In *Secured Mail*, the claims sought to cover "a method whereby a barcode is generated, affixed to a mail object, and sent through the mail system" and "upon receipt, the barcode is scanned, and data corresponding to the sender is sent to the recipient over the network and displayed on the recipient's device."  873 F.3d at 910-11.  Like the Patents-in-Suit, the claims were "not limited to any particular technology of generating, printing, or scanning a

barcode, of sending a mail object, or of sending or receiving the recipient-specific information over a network." *Id.* at 911. The Federal Circuit concluded that "each step of the process [was] directed to the abstract process of communicating information about a mail object using a personalized marking," in particular "QR Codes." *Id.* Since the claims were "non-specific and lack[ed] technical detail," employing "well known" technology and hardware, the Federal Circuit concluded that the claims lacked an inventive concept under Section 101. *Id.* at 912; *and see* Appendix C (representative claims from *Secured Mail* alongside '752 Claim 1).

The Federal Circuit reached the same conclusion in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,* where it affirmed the ineligibility of claims generally reciting "a method of 1) extracting data from hard copy documents using an automated digitizing unit such as a scanner, 2) recognizing specific information from the extracted data, and 3) storing that information in a memory." 776 F.3d 1343, 1345 (Fed. Cir. 2014) ("*Content Extaction*"). The Federal Circuit agreed with the district court, concluding that "the claims of the asserted patents are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory[,]" and noting that the "concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." *Id*. at 1347. The inclusion of a scanner in the *Content Extraction* claims did not alter the subject matter's abstract nature, which the Federal Circuit analogized to the patents in *Alice* that "also required a computer that processed streams of bits, but nonetheless were found to be abstract." *Id*. Little separates the asserted claims from the analysis of *Content Extraction*. While those claims were directed to "data collection, recognition, and *storage*" (*Id.* (emphasis added)), the claims here are instead directed to data recognition and *retrieval*. There is no defensible distinction in the abstract nature of the respective claims, where one sought to claim

9

'storage' of recognized data and the instant claims instead 'retrieve' data based on recognized data. *See* Appendix D (representative claims from *Content Extraction* alongside '752 Claim 1).

Claim 1 of the '752 Patent is no less abstract than the subject matter already found invalid and unpatentable by the Federal Circuit in *Content Extraction* and *Secured Mail*. *See* Appendices C and D. The claim includes no specific limitations or steps informing the process of extracting or decoding data from the symbology. Each of the steps required to fulfill the claimed method are directed to generic and functional ideas of seeing an image, detecting the existence of a symbol that might represent data, interpreting that symbol, then acting in response to that input. *See, e.g.*, *Cyberfone Sys., EEC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (claim directed to "the well-known concept of categorical data storage, i.e., the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible"). The patentee's reference to well-known components to accomplish these functions fails to make the claimed subject matter any less abstract. *See, e.g.*, *Ultramercial,* 772 F.3d at 716 ("the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101") (citation omitted).

By only claiming the desired result—recognizing and retrieving information associated with a pattern like a barcode — without describing any specific roadmap for doing so, Claim 1 of the '752 Patent falls short of claiming eligible subject matter under Section 101. *See Internet Patents,* 790 F.3d at 1348; *Secured Mail,* 873 F.3d at 910-11.

**B.      The Remaining Claims of the Patents-in-Suit are Also Abstract and Invalid**

Courts may analyze representative claims when other asserted claims are "substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348. The remaining asserted claims of the Patents-in-Suit as substantially similar to Claim 1 of the '752 Patent, and

they—and the remaining claims not specifically asserted—are linked to the same patent-ineligible abstract idea of data recognition and retrieval.  *Id.*

In addition to Claim 1 of the '752 Patent, Symbology's Amended Complaint alleges infringement of Claim 1 of the '369 Patent and Claim 1 of the '190 Patent.  (*See* ECF No. 21-1 (Amended Complaint), ¶ 38 (alleging infringement of Claim 1 of the '369 Patent); ¶ 52 (Claim 1 of the '190 Patent).  Each of the other asserted claims is substantively and functionally identical to Claim 1 of the '752 Patent, using slightly different terms that do not in any way transform the abstract nature of the claim.  (*See* Appendix A (comparing '752 to '369; deleting '752's language "of the object" in Claim 1 of the '369; replacing "about the object" with "about the digital image"); Appendix B (comparing '752 to '190; replacing "portable electronic device" with "portable device"; replacing "object" with "digital image").)  The analysis under *Alice* does not depend on any such differences, which thus do not affect the resulting patent ineligibility of the claims.

Further, the remaining claims of the Patents-in-Suit not specifically asserted in the Amended Complaint are also patent-ineligible under *Alice*.  These claims recite insignificant pre- or post-solution activity, such as permitting the user to select presets (ECF No. 21-2, '752 Patent at cls. 2 and 3), having the visual detection system run in the background or automatically (*id.* at cls. 4 and 5), accepting user input (*id.* at cl. 6), or having the user trigger the visual detection device (*id.* at cl. 7).  (*See also, e.g.*, *id.* at cls. 2-28; '369 Patent at cls. 2-28; '190 Patent at cls. 2-20.) These claims seek to lay claim the same abstract concept of data recognition and retrieval, adding only token, abstract variations to the claims discussed in detail herein.  But "[a]dding one abstract idea [] to another abstract idea [] does not render the claim non-abstract."  *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017), cert. denied, 138 S. Ct. 672 (2018).  These token pre- and post-solution activities do not meaningfully limit the Patents-in-Suit.  *See Mayo*, 566 U.S. 66 at 75-76, 78-79.

11

The token limitations differentiating the balance of claims in the Patents-in-Suit from Claim 1 do nothing to render them patent eligible or more tangible than data recognition and retrieval, and fail the first step of the *Alice* test for the same reasons.

### C.     The Patents-in-Suit Do Not Have a Transformative Step

Once the Court determines that claims are directed to an abstract step, the second step of the *Alice* test considers whether the claims contain "an 'intentive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S.Ct. at 2357. Any such "additional features" must be "more than 'well-understood, routine, conventional activity.'" *Id.* (quoting *Mayo*, 566 U.S. at 79–80).

Claim 1 of the '752 Patent does not add any "additional features" at all – much less features that amount to "more than a well-understood, routine, conventional activity" sufficient to qualify as an "inventive concept." *Ultramercial*, 772 F.3d at 715 (quotation omitted). The '752 Patent does not—nor could it—claim that the steps of recognizing and retrieving data were a contribution of the Patents-in-Suit. Instead, the common specification describes conventional, well-known components and processes to accomplish functional steps, from the claimed "portable electronic device," and extending through the software performing any processing to the symbology itself.

The "portable electronic device" is disclosed as *any* portable electronic device including "both applications and imaging systems." (ECF No. 21-2, '752 Patent at 1:58-61 (including "Apple Computer's iPhone, Google's Droid, and various mobile devices from Motorola").) These generic "portable electronic devices" are described as running readily-available software to perform detection and decoding functions. (*See, e.g.*, *id.* at 3:31-33 ("Examples of applications that allow scanning include Neomedia's Neo Reader, Microsoft's Smart Tags, Android's Shop Savvy, Red Laser, ScanBuy, etc.").) And these applications were used to scan symbologies used by the public for decades, including barcodes. (*See id.* at 2:57-61 ("Using any applicable visual detection device

(e.g., a camera, scanner or other device)… the user may select an object by scanning or capturing an image of symbology (e.g., barcodes) associated with the object").

The information decoded from the symbology is then sent to a remote server, again composed of generic components, implemented "in various forms of hardware, software, firmware, special purpose processors, or a combination thereof." (*Id.* at 9:65-10:1.) The specification provides examples of potential "remote servers" – websites visited by millions of visitors in the United States each day, "such as Amazon.com." (*Id.* at 5:38-42.) The communications with the remote server are conveyed using an equally conventional infrastructure, composed of generic components including "a server 12, a storage medium 14, a portable electronic device 16, one or more satellites 18, one or more satellite dishes 20, one or more mobile terminal communication towers 22, [and] one or more Wi-Fi towers 24." (*Id.* at 3:61-67; *see also id.* 4:7-16 (The portable electronic device and server may be connected by "any suitable means" including "the Internet").)

No specialized components or applications are required—much less disclosed—by the specification or the claims.  Courts have repeatedly held that the inclusion of generic hardware or software components, such as those described in the Patents-in-Suit, do not render an abstract idea patent-eligible. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment.  Such a limitation has been held insufficient to save a claim in this context."); *cf. In re Salwan,* 681 F. App'x 938, 941 (Fed. Cir. 2017) ("the claimed elements of a generic 'network,' 'computer

program,' 'central server,' 'device,' and 'server for processing and transferring' are simply not enough to transform the abstract idea into a patent-eligible invention.").

The Patents-in-Suit fail to describe any innovative mechanism to achieve the purported results in a non-abstract way, or improve the functioning of the computer itself. *See, e.g.*, *Alice*, 134 S. Ct. at 2359.  Instead, the Patents-in-Suit claim the advantage disclosed is the mitigation of 'difficulty' "select[ing] the appropriate application for executing the scanning functions."  (ECF No. 21-2, '752 Patent at 3:36-39.)  But claiming a more convenient way to perform an abstract idea using computers as a tool is not a technological solution. *See Intellectual Ventures I*, 792 F.3d at 1367 ("[Claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept.").

The claims of the Patents-in-Suit fail to add "significantly more" to the abstract idea of data recognition and retrieval.  The claims of the Patents-in-Suit are therefore invalid, as they fail to transform the abstract idea of data recognition and retrieval into a patent-eligible invention.

### D.     The Patents-in-Suit Threaten to Preempt the Field

Concern for pre-emption of a field "undergirds [the] § 101 jurisprudence." *Alice*, 134 S. Ct. at 2358.  The claims of the Patents-in-Suit are unbounded, and could be implemented using virtually any device capable of taking a photograph, any conventional scanning or decoding application, and any generic server capable of responding to information requests.  The scope of the claims thereby threatens to preempt all methods for recognizing and retrieving data. *See, e.g., Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature" and "[a]ll that [was] disclosed [was] the ultimate objective").  The patentee described the invention at a functional, high-level in an attempt to cover all methods of data recognition and retrieval, threatening preemption of the field.  The claims are invalid under Section 101.

14

**E.    The Amended Complaint Fails to Provide Factual Allegations or Create a Reasonable Inference That the Claims Are Directed to an Inventive Concept**

In an effort to avoid dismissal at the pleading stage, the Amended Complaint adds a single paragraph purporting to claim that the Patents-in-Suit are directed to an inventive concept. (ECF No. 21-1, ¶ 8.)  The sole allegation begins by referencing the specification's own admission that "electronic devices at the time of the invention could be enhanced with software applications to enable the information retrieval procedures described by the Patents-in-Suit." (*Id*.)  The Amended Complaint then baldly states that the "combination of steps and/or functionalities—as embodied for example in claim 1—resulted in the enhancement or improvement of electronic devices at the time of the invention." (*Id.*)  But this statement is devoid of factual content, and instead merely recites the legal conclusion Symbology hopes this Court might reach: that the claims "resulted in the enhancement or improvement of electronic devices at the time of the invention." (*Id.*)  Symbology's conclusory allegation is devoid of factual content necessary to support its allegation, and is properly disregarded by the Court.  *Ashcroft*, 556 U.S. at 678; *and see Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998) ("conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss.")  Nothing in the Amended Complaint itself supports an inventive concept sufficient to transform the abstract idea into something patent-eligible.

## IV.    CONCLUSION

As set forth above, the Patents-in-Suit are not directed to patent-eligible subject matter. OtterBox respectfully requests this Court find the Patents-in-Suit invalid under Section 101, and dismiss the Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: July 5, 2018                        Respectfully Submitted,

                                          */s/ James W. Beard*
                                          Garret Leach
                                          KIRKLAND & ELLIS LLP

300 North LaSalle
Chicago, IL 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email: garret.leach@kirkland.com

James Beard
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone:      (415) 439-1689
Facsimile:      (415) 439-1500
Email: james.beard@kirkland.com

***Attorneys for Defendant***
***Otter Products, LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 5, 2018, a true and correct copy of the foregoing document was served via CM/ECF to all counsel of record.

*<u>/s/ James W. Beard</u>*
James W. Beard
